JONES, APPELLANT, *v.* WEHRI, A MINOR, APPELLEE.

112

(No. 393—Decided February 20, 1963.)

*Messrs. Recker & Leopold* and *Mr. Joseph B. Quatman,* for appellant.

*Mr. Marcus C. Downing* and *Mr. George E. Schroeder,* for appellee.

GUERNSEY, J. This is an appeal on questions of law from a judgment *non obstante veredicto* of the Common Pleas Court entered in favor of the defendant, Hubert Wehri, and from an order of that court sustaining his motion for a new trial. This order provided, however, in conformity with the procedural provisions of Sections 2323.18, and 2323.181, Revised Code, that a new trial shall be had only in the event of a reversal of the judgment *non obstante veredicto.*

The general verdict of the jury superseded by the judgment *non obstante veredicto* had been in favor of plaintiff, Wilbur Jones, as father and next friend of his minor daughter, Joyce Jones, and judgment had been entered on the jury verdict.

It is undisputed in evidence that shortly before 11 p. m., November 22, 1958, during the hours of darkness, the defendant drove his car east on the ten-foot paved portion of a township road located in Putnam County, Ohio, at a speed of at least 50 miles per hour, without any headlights in operation thereon; that about sixty feet west of the point of collision he first saw a car parked in the township road facing west; that he thereupon applied his brakes, skidded into and collided with the parked car; that at the moment of collision one Joyce Jones was sitting to the right side on the front seat of the parked car; and that the collision caused her the personal injuries of which plaintiff complains. It is also undisputed that the night was clear, the road level, and, except for the cars involved, the view unobstructed, and that on either side of the paved portion of the road there was at least a seven-foot berm covered with "June grass."

Joyce Jones is now the wife of Robert Moratt, who at the moment of the collision was sitting in the driver's position in the parked car. She testified, among other things not material to the matters here at issue, that she was learning to drive, needed nighttime driving experience, under the supervision of Moratt had driven for some distance along the township road, and then had stopped to permit Moratt to resume driving; that she pulled the car off the north edge of the pavement with the right wheels "off about four feet"; that she then put the car in neutral, pulled on the emergency brake, and switched the lights from "bright lights onto the park lights"; and that Moratt then got out of the right side of the car, went around and got back in as she slid across the seat; and that he put the car in gear and turned to say something to her, at which time the collision occurred. She testified also that after Moratt got back into the car they talked for a few minutes, but it cannot be definitely determined from her testimony whether this conversation took place before or after he put the car in gear.

Moratt testified, among other things not material to the issues herein, that he had picked Joyce up at her home, stopping his car in her driveway; that it was then dark and his parking lights were operating and were standard equipment on his Chevrolet car; that after Joyce drove along the township road she stopped with the right wheels about four feet off and

to the north of the paved portion of the township road; that he "said it [the berm] was probably soft and I told her as she was pulling over there that she was over far enough"; that she put on the parking lights; that he got out the right side and noted when he stepped into a hole and almost fell that the ground was soft; that he then walked around the car and got in behind the steering wheel; that meanwhile Joyce had "scooted over to the door"; that after getting in the car he "put the clutch in on the car, pulled it in first gear as I was talking—as I looked back I was just going to start away—when I looked up I saw this car coming right at us"; that his next step would have been to pull the headlights on; that his car measured six feet-five or six inches across the front fenders; that he would say the defendant's car was twenty five or thirty feet in front of him when he first saw it; and "that after Joyce stopped the car with the parking lights on, it took about two minutes time consumed before the impact."

The defendant offered no evidence contrary to the foregoing testimony of Joyce and Moratt except as to the position of the parked car and as to whether parking lights were operating thereon at the time of the collision. The testimony, offered both by plaintiff and defendant, of officers investigating the collision was to the effect that skid marks indicated that the left front wheel of the Moratt car had been parked about 4½ feet south of the north edge of the pavement.

The testimony of the defendant, elicited on cross-examination during the plaintiff's case in chief and on direct examination during presentation of defendant's evidence, and that of one of his passengers (Ellerbrock), elicited on direct examination during presentation of defendant's evidence, was to the effect that just before the collision they saw a black object on the highway but did not see any lights on it. The testimony of defendant's remaining passengers (Erhart and Schimmoeller), elicited on direct examination during presentation of defendant's evidence, was to the effect that they saw nothing ahead of them on the road prior to the collision. There was no evidence offered either by plaintiff or defendant, other than hereinbefore referred to, reflecting on the intensity or power of the parking lights on Moratt's car.

Although the judgment entries of the trial court do not

indicate the reasons for granting the motion for judgment *non obstante veredicto* and for sustaining the motion for a new trial the following appears pertinent in the opinion of the trial court:

"*As part of her case, plaintiff called* defendant and *the other three occupants of defendant's car.* Defendant testified that at 60 feet away he could see the car, but he didn't see any lights. One of his passengers also testified to the same thing, and the other two occupants said that they did not see anything.

"Thus, *any presumption* the court might have made as to intensity of the lights upon the car *were overcome by evidence offered by the plaintiff herself* by the testimony of two witnesses that at 60 feet away they could not see any lights. Regarding the plaintiff's testimony most favorably, one may reach the conclusion that lights were on, but the lack of any testimony to show their intensity, opposed to positive testimony that they were not visible at 60 feet, *makes plaintiff by her own evidence* guilty of contributory negligence. True, the witnesses may be biased, but this is a question of positive testimony as opposed to no testimony.

"In addition to this, there is the issue of ordinary care. In this case, this involves not only the statutes singularly, but generally. Thus, a person who parks on a highway only ten feet in width at night at a place where *it is not impossible to pull off the highway;* after doing so, remains standing for at least three minutes; while standing turns off the bright lights and puts on the parking lights; is facing no emergency, but only changing drivers, which could have been done at a point less than a half mile away there being a wider road, and having just turned from a wider road, under all these facts and circumstances is guilty of contributory negligence.

"*On these latter two propositions,* the court should have directed a verdict in favor of the defendant, and *the defendant is entitled to a judgment notwithstanding the verdict.*

"In addition, the statute requires that the court rule on the motion for new trial in the alternative. From the foregoing the court would have granted a motion for new trial *as the verdict is against the manifest weight of the evidence* upon all the issues discussed, except for the allowance of the motion for judgment notwithstanding the verdict." (Emphasis added.)

The plaintiff, appellant herein, claims that the trial court erred both in its judgment *non obstante veredicto* and in its order sustaining defendant's motion for a new trial.

Except as may be implicit in the granting of defendant's motion for a new trial there is no issue before this court as to the actionable negligence of defendant. The granting of judgment *non obstante veredicto* by the trial court involves only the issue of the contributory negligence of Joyce Jones. As we are of the opinion that the evidence will not support a determination that Joyce Jones was, as a matter of law, guilty of contributory negligence in some manner not determined by the trial court we will consider only whether Joyce Jones was, as a matter of law, guilty of negligence directly and proximately contributing to her injuries in the respects set forth in the trial court's opinion.

The trial court entered its judgment *non obstante veredicto* on the grounds (1) that "one may reach the conclusion that lights were on, but the lack of any testimony that they were not visible at 60 feet, makes plaintiff *by her own evidence* guilty of contributory negligence," and (2) that the issue of ordinary care involves "not only the statutes singularly, but generally," and on the facts and circumstances set forth in that portion of the trial court's opinion hereinbefore quoted Joyce Jones "is guilty of contributory negligence." It is also implicit in these conclusions that the court determined the negligence, in each respect, to have directly and proximately contributed to the injuries received by her.

Before further examining these issues we first observe that the trial court was completely in error as to one of its premises, *i. e.,* that "as part of her case, plaintiff called defendant and the other three occupants of defendant's car," from which the court concluded that plaintiff was bound by their testimony. A careful examination of the bill of exceptions reveals that defendant's passengers were *not* called as plaintiff's witnesses at any time and were called solely by the defendant in the presentation of his evidence. Plaintiff and Joyce Jones were not bound by the testimony of the passengers so elicited nor were they bound by the testimony of defendant when called as upon cross-examination. 21 Ohio Jurisprudence (2d), 710, Evidence, Section 684, and authorities therein cited. Would the trial

court have reached different conclusions had it not proceeded on this false premise?

Respecting the entry of judgment *non obstante veredicto,* a trial court and the Court of Appeals, in testing same, are controlled by the following rule in the case of *McNees* v. *Cincinnati Street Ry. Co.,* 152 Ohio St., 269:

"2. Ordinarily, in order to sustain a motion for judgment notwithstanding a general verdict, *the evidence* received upon the trial and the facts established by admissions in the pleadings and in the record *must be such that the court would have been required, upon a proper motion therefor, to direct a verdict for the party seeking such judgment.* Even if, on such a motion for judgment, a court may also consider the answer of a jury to an interrogatory as establishing facts found by such answer, such motion must be overruled if the evidence, received upon the trial, and the facts, established by admissions in the pleadings and in the record and by answers of the jury to interrogatories, do not, as a matter of law, require a finding for the party making such a motion on some issue, which should have been found in his favor in order to justify a general verdict for him. In passing upon such a motion, neither the trial court, the Court of Appeals nor this court may weigh the evidence. Section 11601, General Code." (Emphasis added.)

The same rules apply as are applicable to motions to direct a verdict and appear in 39 Ohio Jurisprudence, 799, Trial, Section 183, quoted with approval in the case of *Wilkeson, Admr.,* v. *Erskine & Son, Inc.,* 145 Ohio St., 218, 228:

"The trial judge, in ruling upon a motion, to direct a verdict or for a nonsuit on the evidence introduced, must not only assume the truth of the evidence in behalf of the party against whom the motion is directed, but must construe the evidence most strongly in favor of that party, or, as it is sometimes expressed, must give the most favorable interpretation or intendment in his behalf, and adopt the view most favorable to his contention, or consider it in the light most favorable to him, of which such evidence is susceptible. To this end the trial judge should give the party, against whom the motion is made, the benefit of all reasonable inferences that can be drawn from the evidence offered and consider as proved such reasonable inferences favorable to him as the facts proved warrant—as are

deducible from the evidence given—without carrying the inferences to an illogical conclusion. In other words, the evidence must be construed favorably to the submission of the case to the jury, and the trial judge should indulge in every possible consideration in favor of such submission.

"Formerly, if there could be said to be a scintilla of evidence in favor of such party on all material issues, the court had to submit the case to the jury. Under the present rule, however, if, after giving the evidence such favorable construction, reasonable minds can reasonably come to but one conclusion and that conclusion is adverse to the party against whom the motion is made, the judge should direct a verdict against him."

The first finding of contributory negligence involves the application of Section 4513.10, Revised Code, which, in form applicable at the time of the collision, read, in pertinent part, as follows:

"Except in case of an emergency, whenever a vehicle is parked or stopped upon a roadway open to traffic or a shoulder adjacent thereto, whether attended or unattended, during the times mentioned in Section 4513.03 of the Revised Code, such vehicle shall be equipped with one or more lights which shall exhibit a white light on the roadway side visible from a distance of five hundred feet to the front of such vehicle * * *."

The trial court, properly concluded that the parking lights on plaintiff's car were lit, but also concluded that there was no evidence from which it could be reasonably inferred that the lights were of the intensity required by law and that there was positive testimony to the contrary. With this latter view we cannot agree. If we infer that the lights were lit, we must also infer that they were visible to some degree. There was also evidence that the night was clear, that the parking lights were standard equipment on this standard model car and were in normal operating condition earlier in the evening when Moratt picked Joyce up at her home, and pictorial evidence showing that the front end of the car was clean and not obscured by dust or dirt. On the other hand, defendant and one of his passengers testified that they did not see any lights on the parked car, and his other two passengers testified that they saw nothing ahead of them on the road prior to the collision.

It might be reasoned that this testimony is in conflict only with the evidence that the lights were lit and therefore must be disbelieved or disregarded. However, without disbelieving or disregarding it and considering it to bear generally on the question of intensity, it is neither positive nor conclusive. It does not show that defendant, or any of his passengers, *looked* at a distance of five hundred feet to the front of the Moratt car and at such point could not see "a white light on the roadway side visible from a distance of five hundred feet to the front of such vehicle." It must also be remembered that the burden of proof of Joyce Jones' contributory negligence was on the defendant. Under these circumstances, with respect to the question of the intensity or power of the parking lights, and testing the evidence by the rules of construction set forth with approval in the *Wilkeson case, supra* (145 Ohio St., 218), it cannot be concluded that Joyce Jones was contributorily negligent as a matter of law, and the trial court committed error prejudicial to the plaintiff in so doing.

It appears that in finding, as a matter of law, that Joyce Jones failed to use ordinary care, the trial court had in mind the application, in addition to the provisions of the foregoing parking light statute, of the provisions of Section 4511.66, Revised Code, reading as follows:

"Upon any highway outside a business or residence district no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway if it is *practicable* to stop, park, or so leave such vehicle off the paved or main traveled part of said highway. In every event a clear and unobstructed portion of the highway opposite such standing vehicle shall be left for the free passage of other vehicles, and a clear view of such stopped vehicle shall be available from a distance of two hundred feet in each direction upon such highway.

"This section does not apply to the driver of any vehicle which is disabled while on the paved or improved or main traveled portion of a highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving the disabled vehicle in such position." (Emphasis added.)

Although the Supreme Court has not arrived at a similar

decision as to parking *outside* a municipality, in interpreting Section 4513.10, Revised Code (Section 6307-83, General Code), in the case of *Thompson* v. *Ford,* 164 Ohio St., 74, it held, as appears at page 81:

"Section 6307-83, General Code, constitutes general and comprehensive legislation prescribing minutely a course of conduct as to lights where one parks an automobile in a municipality, and such section elaborately describes the limitations and exceptions as to the requirement of lights, and we are of the opinion that it lays down a statutory standard of care which replaces the precautions enjoined by common law. A violation of the statute makes the violator guilty of negligence per se, without regard to what the fictitious ordinarily prudent person would have or would not have done in the absence of the statute, and the comprehensiveness of the statute absolves one from liability for claimed negligence in failing to display lights, where he has fully complied with it."

In our opinion the same rule applies equally as well to the provisions of the same statute as they relate to use of parking lights outside a municipality and, in such respect, the provisions of the statute may not be referred to as standards to determinate the exercise of ordinary care. The trial court committed error prejudicial to the plaintiff-appellant in considering the issue of ordinary care as involving Section 4513.10, Revised Code, either singularly or generally with other statutes, with reference to the use of parking lights.

We need not determine whether Section 4511.66, Revised Code, also excludes matters within its scope from the issue of ordinary care, for the trial court, as part of its standard of care, imposed a standard of *possibility* of pulling the vehicle off the highway rather than that appearing in the statute of *practicability* of parking off the paved or main traveled part of the highway. Thus, if the standard of the statute could be applied at all, it was misapplied.

It appears the trial court, on the issue of ordinary care, also gave consideration to whether Joyce Jones left a clear and unobstructed portion of the highway opposite her standing vehicle for the free passage of other vehicles, as prescribed by Section 4511.66, Revised Code. Defendant contends, and it appears, that the trial court may have applied an interpretation

of former Section 6310-27, General Code, appearing in *Pugh* v. *Akron-Chicago Transportation Co.,* 64 Ohio App., 479, at 493 wherein this court said:

"Free passage of the road, in the sense it is used in the second prohibiton, means free passage of vehicles in the ordinary course of traffic on the improved portion of the road, that is, the unconfined and unrestrained passage of vehicles moving in one direction past vehicles moving in the same or in an opposite direction on the improved portion of the road, and this prohibition contemplates a sufficient width of the improved portion of the road being left unobstructed to permit the free passage of motor vehicles in separate adjacent lanes of traffic."

The above quotation from the *Pugh case* was an interpretation of that portion of Section 6310-27, General Code, reading that "no vehicle shall stop on any road or highway * * * in any such way as to obstruct a free passage of the road." This General Code section was repealed, not re-enacted, and the interpretation contained in the *Pugh case* is not controlling here.

The "free passage" prohibition of Section 4511.66, Revised Code, reads as follows:

"In every event a clear and unobstructed portion of the highway opposite such standing vehicle shall be left for the free passage of other vehicles, * * *."

In its form in effect on the date of the collision, Section 4511.01, Revised Code, applicable to Section 4511.66, Revised Code, contained the following definition:

"(Z) 'Street or highway' means the entire width between the boundary lines of every way open to the use of the public as a thoroughfare for purposes of vehicular travel."

Since the first part of Section 4511.66 explicitly provides for parking off the "paved or main traveled part of said highway" and the prohibition with regard to "free passage" requires a clear and unobstructed portion of the highway, using highway in its general sense, the definition in Section 4511.01, Revised Code, controls. Construing the evidence in the manner required when determining a motion *non obstante veredicto*, and ignoring the testimony as to skid marks of a deputy sheriff called as a witness by plaintiff, it showed the Moratt car to be parked from two to two and one half feet on the paved portion of the road leaving, except for left fender overhang, some seven

and one half feet to eight feet of the paved portion of the road for the free passage of other vehicles. Construing the evidence as the defendant would construe it, it showed the Moratt car to be parked about four and one half feet on the paved portion of the road leaving, except for left fender overhang, some five and one half feet of the paved portion of the road and all the improved berm for the free passage of other vehicles. The evidence did not therefore support a finding that Joyce Jones had violated the statute and thus the standard of ordinary care in this respect.

We conclude, therefore, that with reference to the court's finding that, as a matter of law, Joyce Jones was guilty of contributory negligence in not exercising ordinary care, the trial court has so inseparably joined in the determination of such exercise matters which were erroneously included therein, that its entire conclusion in this regard must also be considered prejudicially erroneous.

As hereinbefore stated, it was implicit in each of the trial court's findings of contributory negligence on the part of Joyce Jones that, also as a matter of law, her negligence directly and proximately contributed to her own injury. In those instances in which reasonable minds could differ on the issue, proximate cause is properly a question of fact for the jury. *Glasco* v. *Mendelman,* 143 Ohio St., 649; *White* v. *Ohio Power Co.,* 171 Ohio St., 148.

In this case the undisputed evidence shows that Joyce Jones drove and parked under the direction of Robert Moratt, that two to three minutes before the collision she relinquished the driving and full control of the car to him, that at the time of the collision he was actively engaged in driving and controlling the car, having depressed the clutch and shifted into first gear in preparation to move the car, and that at the time of the collision Joyce had fully resumed the status of a guest passenger.

It was said by Judge Hart in *Bush, Admr.,* v. *Harvey Transfer Co.,* 146 Ohio St., 657, at page 670:

"As a general rule, one who is merely a guest in an automobile may rely to some extent, though not absolutely, upon the driver to exercise reasonable care to avoid danger, and, in the absence of unusual circumstances, a guest is not guilty of contributory negligence if he relies upon the skill and ability of

the driver and does not take active steps to see that the vehicle is properly operated. Ordinarily, it is not the province or even proper for a guest to warn or interfere with the driver until he discovers that the driver is unskillful, reckless, or has failed to perceive impending danger. * * *''

Moreover, it was held in the case of *Hurt* v. *Charles J. Rogers Transportation Co.,* 164 Ohio St., 323:

''1. Where there intervenes between an agency creating a hazard and an injury resulting from such hazard another conscious and responsible agency which could or should have eliminated the hazard, the original agency is relieved from liability. A break in the chain of causation thereby takes place which operates to absolve the original agency.''

On this state of the law, and on the evidence, Joyce's negligence, if any, in the manner in which she parked the car, may have terminated upon her yielding control to Moratt, on whom she had a right to rely, or his duty, if any, to have eliminated the hazard, may have broken the chain of causation. Under these circumstances reasonable minds could differ on the issue of proximate cause and we are further of the opinion that the trial court committed error in this respect prejudicial to the appellant in granting the motion for judgment *non obstante veredicto.*

We come now to the action of the trial court in granting the motion for a new trial.

It was held by the Supreme Court in the case of *Anderson* v. *Richards,* 173 Ohio St., 50, that ''where, at the conclusion of a trial, a motion for judgment notwithstanding the verdict and a motion for new trial under Section 2323.181, Revised Code, are made, the ruling upon each motion is appealable, but there is one appeal in the cause itself, and errors predicated on each ruling must be presented in the same appeal *(Jolley* v. *Martin Brothers Box Co.,* 158 Ohio St., 416, overruled).'' The *Anderson case* involved an order of the trial court *overruling* a motion for a new trial, and, so far as we have been able to determine, the law remains unchanged that an order sustaining a motion for a new trial is a final appealable order only in those cases where it is also shown that the trial court has abused its discretion in making the order.

It was therefore incumbent on the appellant here to show

that the trial court abused its discretion in making the order sustaining the motion for a new trial. By definition, "the term 'abuse of discretion' in relation to the granting of a motion for a new trial connotes more than an error of law or of judgment; it implies an unreasonable, arbitrary or unconscionable attitude on the part of the court." *Steiner* v. *Custer*, 137 Ohio St., 448. The only reason assigned by the trial court for making such order is that "the verdict is against the manifest weight of the evidence upon all the issues discussed." As it did not discuss the issue of defendant's negligence this conclusion relates only to the weight of the evidence on the issue of Joyce Jones' contributory negligence. Since with respect to her negligence and whether it directly and proximately contributed to her injuries there are issues of fact supported by conflicting evidence whereby reasonable minds might disagree as to the conclusions to be drawn therefrom we cannot say that the trial court abused its discretion, as hereinbefore defined, in sustaining the motion for a new trial on the assigned ground. See, also, *Poske* v. *Mergl,* 169 Ohio St., 70.

For the prejudicial errors of the trial court in granting the motion for judgment *non obstante veredicto* such judgment must be reversed and vacated and the cause remanded with instructions to overrule said motion. Finding no abuse of discretion in the trial court's sustaining the motion for new trial, its order doing so does not constitute a final appealable order, and the appeal must, to the extent it constitutes an appeal from same, be dismissed.

*Judgment accordingly.*

MIDDLETON, P. J., and YOUNGER, J., concur.