KEMPER et al., Appellants,

v.

BUILDER'S SQUARE, INC., Appellee.

[Cite as *Kemper v. Builder's Square, Inc.* (1996), 109 Ohio App.3d 127.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 15224.

Decided Feb. 2, 1996.

*David Fierst,* for appellants.

*Joseph L. Dilts* and *James G. Petrie,* for appellee.

FAIN, Judge.

Plaintiffs-appellants Lloyd and Sheila Kemper appeal from a summary judgment rendered in favor of defendant-appellee Builder's Square, Inc. The Kem-

pers contend that the trial court erred in concluding that they were required to adduce evidence regarding (1) the extent of the duty of ordinary care Builder's Square owed to Ms. Kemper as a business invitee, and (2) whether the wooden posts that struck Ms. Kemper were within the exclusive control of Builder's Square as a factual predicate for the invocation of the doctrine of *res ipsa loquitur*.

We agree with the trial court that the doctrine of *res ipsa loquitur* has no application to the facts made up by the evidentiary material presented by the parties in support of, and in opposition to, Builder's Square's motion for summary judgment. However, we disagree with the trial court's holding that expert testimony is necessary to establish Builder's Square's duty of ordinary care, and we conclude that reasonable minds could reach different conclusions as to whether Builder's Square's failure to employ any mechanism to restrain the four-foot wooden posts standing upright on a display shelf from toppling forward and striking a customer was consistent with the duty of ordinary care that it owed to its customers. Accordingly, the judgment of the trial court is *reversed*, and this cause is *remanded* for further proceedings consistent with this opinion.

On June 19, 1992, at approximately 6:00 p.m., Lloyd and Shirley Kemper were shopping at Builder's Square for unfinished precut wood trim for an entertainment cabinet they were making. Ms. Kemper selected a piece of wood trim molding, approximately six or eight feet long, for the cabinet. She carried the molding upright in one hand as she walked through the store. Ms. Kemper stopped to look at unfinished preformed pieces for bannisters, railings, and posts in four- and eight-foot lengths. The merchandise was stacked upright with metal dividers separating styles and lengths on a two-shelf display unit. The upper shelf was approximately at eye level. Mr. Kemper was ahead of Ms. Kemper in the same aisle walking toward the unfinished pine display. Ms. Kemper testified that she was only looking at the display and did not touch anything on the shelving unit when several of the shorter turned posts fell off the upper shelf, striking the back of her head, her chest, and left leg. These posts were solid wood. The base of the posts measured four inches by four inches. The posts were about three and one-half to four feet long. She also testified that two employees came to assist her and Mr. Kemper after the posts had fallen on her.

In the accident report, William Winegardner, the store manager, wrote: "While looking at hand rails, 4 x 4 newel post fell and hit customer in chest, head and thigh." In section 5 of the report, Winegardner indicated that the nature of the injury was "cut, laceration, puncture, abrasion." In section 8, entitled "Action taken to prevent reoccurrence," Winegardner wrote: "I checked the area and saw nothing wrong."

The Kempers filed a personal injury suit with a loss of consortium claim alleging that Builder's Square was negligent in displaying its merchandise in an unsafe manner, in failing to make the premises safe, and in failing to warn customers of dangerous conditions. After discovery, in its motion for summary judgment, Builder's Square argued that the Kempers lacked evidence on genuine issues of material fact for trial on the extent of its duty of ordinary care to business invitees and on proximate cause. In response, the Kempers argued that displaying the newel posts without any strap or restraining device constituted negligence or, alternatively, that the trial court should apply *res ipsa loquitur*. The trial court granted Builder's Square's motion for summary judgment based on the Kempers' failure to produce evidence to establish Builder's Square's duty of ordinary care. The trial court also concluded that because the posts were not in the exclusive control of Builder's Square at the time, *res ipsa loquitur* was not applicable. From the summary judgment, the Kempers appeal.

The Kempers' first and second assignments of error are as follows:

"The trial court incorrectly granted summary judgment in favor of Builder's Square.

"The trial court's holding that plaintiffs' failure to produce any evidence that industry standards require the use of a restraining devise [*sic* ] is unsupported by any case law or other authority."

Essentially, the Kempers assign as error the trial court's grant of summary judgment in favor of Builder's Square, contending that (1) Builder's Square did not meet its burden on summary judgment because Ms. Kemper's testimony showed that no other customers were near her, (2) the trial court misapplied the law of negligence and *res ipsa loquitur*, and (3) the trial court imposed a requirement of expert testimony on the issue of whether Builder's Square had breached its duty of ordinary care to Ms. Kemper.

Builder's Square contends that the trial court properly granted summary judgment because, as the nonmovant, the Kempers failed to set forth specific facts under Civ.R. 56(E) showing that there are genuine issues of material fact for trial on the essential elements of their negligence claim regarding the extent of its duty and proximate cause. Moreover, Builder's Square contends that the Kempers have not produced sufficient evidence to warrant the application of *res ipsa loquitur* to their negligence claim.

■■ When a party moving for summary judgment shows that the nonmoving party lacks evidence on an element essential to its claim, the nonmoving party has the burden to respond and produce Civ.R. 56(C) evidence "set[ting] forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

Civ.R. 56(E). In *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus, the Ohio Supreme Court held: "A motion for summary judgment forces the nonmoving party to produce evidence on any issue for which that party bears the burden of production at trial. (*Celotex Corp. v. Catrett* [1986], 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265, approved and followed.)" Furthermore, the substantive law determines which facts are material. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211; *Wing,* paragraph three of the syllabus.

The Kempers argue that "the failure of Defendant Builder's Square to restrain the wood from falling by the use of a safety strap or some other device constitutes a failure to exercise ordinary care." Builder's Square argues that the Kempers "have failed to meet the burden of producing evidence that Builder's Square failed to take safeguards that a reasonable store owner would take under similar circumstances." Essentially, Builder's Square argues that before the Kempers can prevail, they must present evidence of the existence of a standard of care within the retail industry that would require the use of restraints to prevent merchandise on display from toppling over and hitting a customer.

The Kempers allege, and Builder's Square does not dispute, that Ms. Kemper sustained injury as a result of several wooden posts on display toppling forward and striking her. It is also undisputed that no restraints were employed to prevent the posts from toppling over and striking a customer. Thus, the fact that the failure to employ any restraints was a proximate cause of Ms. Kemper's injury is not in dispute, since her injury was a reasonably foreseeable consequence of the failure to employ any restraining device to prevent the vertically stacked posts from toppling forward. Since it is also undisputed that Builder's Square owed Ms. Kemper, a business invitee, the duty of ordinary care, the only genuine issue in the case is whether the failure to employ a restraining device violated that duty of ordinary care.

Expert testimony, or any testimony at all, for that matter, is not always required to establish a standard of care. Even where not all of the factors involved as to how a standard of care should be exercised are obvious to, or readily understandable by, a lay jury, affirmative evidence of the standard of care is not necessarily required. *Thompson v. Ohio Fuel Gas Co.* (1967), 9 Ohio St.2d 116, 117–118, 38 O.O.2d 294, 295–296, 224 N.E.2d 131, 133–135.

"Except for malpractice cases (against a doctor, dentist, etc.) there is no general rule or policy requiring expert testimony as to the standard of care, and this is true even in the increasingly broad area wherein expert opinion will be

received. * * * Courts could very easily expand the area in which expert testimony is required to establish the standard of conduct, but the tendency has been instead to resolve doubtful questions in favor of allowing the jury to decide the issue of negligence without its aid. * * *" *Id.* at 118, 38 O.O.2d at 296, 224 N.E.2d at 134, quoting 2 Harper & James, The Law of Torts (1956) 966, Section 17.1.

■ Significantly, the plaintiff's decedent in *Thompson, supra,* was an equipment operator for a county engineer, who was killed as a result of an explosion when the blade of a road grader he was operating struck the defendant's gas transmission line. If a lay jury could be expected to determine the proper standard of care in that case without the aid of an expert familiar with the usages and customs of the industry, we see nothing so esoteric in the case before us that would require expert testimony to establish the standard of care.

■ Furthermore, evidence of usage and custom, while relevant to the determination of the standard of ordinary care, is not controlling.

"What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not." *Texas & Pacific Ry. Co. v. Behymer* (1903), 189 U.S. 468, 470, 23 S.Ct. 622, 623, 47 L.Ed. 905, 906, quoted approvingly in *Thompson, supra.*

See, also, *Bahamas Agr. Industries, Ltd. v. Riley Stoker Corp.* (C.A.6, 1975), 526 F.2d 1174, 1178, in which the United States Court of Appeals for the Sixth Circuit, construing Ohio law, observed as follows:

"The holding in *Thompson* clearly is consistent with other Ohio authority on the law of negligence. These cases have held that proof of a party's conformance with custom or usage in a particular trade is not conclusive on the question of negligence, although it may be considered as evidence of whether the defendant exercised ordinary care. *Hageman v. Signal L.P. Gas, Inc.,* 486 F.2d 479 (6th Cir.1973); *Davidson v. Toledo Home Tel. Co.,* 5 Ohio App. 237 (1915).

"To require an affirmative showing of evidence establishing a standard of care for service representatives belies the tangential significance of evidence of custom and usage. Evidence of custom and usage going to the issue of the appropriate standard of care is not necessary to establish a prima facie case of negligence under Ohio law; thus the absence of affirmative evidence of an appropriate standard of care necessarily constitutes an insufficient basis for directing a verdict against the plaintiff in this case."

We agree with the United States Court of Appeals for the Sixth Circuit's characterization of Ohio law. If the absence of affirmative evidence of an

appropriate standard of care constitutes an insufficient basis for a directed verdict in defendant's favor, perforce it constitutes an insufficient basis for summary judgment in defendant's favor.

In our view, a reasonable jury might find that Builder's Square's failure to use any mechanism to restrain the four-foot wooden posts displayed on an upper shelf from toppling forward and striking a customer breached the standard of ordinary care owed to its customers.

One case cited by Builder's Square does bear a striking similarity to the case before us, as Builder's Square suggests. In *Carey v. Toys–R–Us* (Sept. 2, 1992), Summit App. No. 15380, unreported, 1992 WL 217827, a mother shopping in a toy store with her daughter was struck in the head, and seriously injured, by a tricycle that fell from an overhead display rack. In that case there was a one-inch metal lip to restrain the propensity of merchandise to fall from the rack, which was inclined downward slightly toward the browsing customers. There is language in the opinion in that case to suggest that testimony concerning the existence of an industry standard was required.

The essential distinction in *Carey, supra,* however, is that in that case the issue of negligence was submitted to a jury, which found for the defendant. The plaintiff-appellant was arguing that the trial court should have directed a verdict in her favor as to liability. It was in that context that the appellate court observed that without some testimony of the existence of an industry safety standard, it could not adopt a rule of *per se* negligence to take the issue of the proper standard of ordinary care from the jury in that case. In the case before us, we are not prepared to say that Builder's Square was negligent as a matter of law. To the contrary, we conclude that a reasonable jury might find either way, on these facts, as to whether the failure to use any mechanism to restrain the wooden posts breached the duty of ordinary care.

Builder's Square cites *Hughart v. Greenfield Research, Inc.* (Oct. 8, 1991), Highland App. No. 772, unreported, 1991 WL 207259, for the proposition that "failure to identify the cause of their injuries 'precludes a reasonable inference that the defendants violated a duty of care owed to plaintiff.'" In the case before us, of course, it is undisputed that the failure to have employed a restraining device, which a reasonable mind might find to have been inconsistent with the duty of ordinary care, was a proximate cause of Ms. Kemper's injuries.

Builder's Square cites *Parras v. Std. Oil Co.* (1953), 160 Ohio St. 315, 52 O.O. 206, 116 N.E.2d 300, and *Mines v. Russo's Stop & Shop* (Feb. 23, 1989), Cuyahoga App. No. 55073, unreported, 1989 WL 253888, for the proposition that "[t]he fact that a patron was injured on a defendant's premises does not by itself give rise to an inference of negligence." We agree. In the case before us, the Kempers contend that Builder's Square's failure to employ a restraining device

was negligent in view of the foreseeable risk that the four-foot posts displayed on an upper shelf would topple over and strike a customer. The Kempers are not relying upon the mere fact that Ms. Kemper was injured on Builder's Square's premises for an inference of negligence. In *Mines*, the plaintiff made a conclusory allegation that she slipped and fell because of a "defect" in the defendant's pavement, but could not identify the nature of the defect. The court properly held that the allegation did not specify an act or omission that a reasonable jury could find to have constituted negligence. *Parras* was a slip-and-fall case where there was no evidence as to how the substance that allegedly caused the plaintiff to slip and fall came to be on the surface on which the plaintiff stepped, how long it had been there, or that anyone knew that it was there. Again, there was no evidence in *Parras*, even inferentially, of an act or omission of the defendant that a reasonable jury might find negligent, unlike the case before us, in which the alleged negligence was Builder's Square's failure to employ any restraining device to prevent the four-foot posts on an upper shelf from toppling forward and striking a customer, a reasonably foreseeable contingency.

*Rogers v. Kroger Co.* (Feb. 1, 1982), Hamilton App. No. C–810209, unreported, 1982 WL 4648, and *Evans v. Kroger Co.* (Nov. 24, 1982), Hamilton App. No. C–820108, unreported, 1982 WL 4837, both of which are cited by Builder's Square, are similar to *Parras, supra*, in that there was no evidence in either case to establish any negligent act or omission on the part of the defendant store owner. Specifically, there was no evidence that the store owner had, or in the exercise of ordinary care should have had, notice of an unreasonable hazard (an accumulation of water and, in one case, vegetable produce on the floor) for a sufficient time to enable the store owner to remove the hazard or warn patrons. In the case before us, Builder's Square does not contend that it was unaware that it did not employ any restraining device to prevent or to reduce the possibility that the four-foot posts it was offering for sale would topple forward and strike a customer.

One distinguishing characteristic of the slip and fall cases cited by Builder's Square was well expressed in *Presley v. Norwood* (1973), 36 Ohio St.2d 29, 65 O.O.2d 129, 303 N.E.2d 81, in which the court said:

"Where, as here, injury arises from a 'slip and fall' due to a hazardous condition not created by the proprietor or his employees, the rule is clear. In such cases the plaintiff must show that the defendant had, or in the exercise of ordinary care should have had, notice of the hazard for a sufficient time to enable him, in the exercise of ordinary care, to remove it or warn patrons about it." *Id.* at 31, 65 O.O.2d at 130, 303 N.E.2d at 83.

*Sweet v. Big Bear Stores Co.* (1952), 158 Ohio St. 256, 49 O.O. 89, 108 N.E.2d 737, *Johnson v. Wagner Provision Co.* (1943), 141 Ohio St. 584, 26 O.O. 161, 49 N.E.2d 925, *Tiberi v. Fisher Bros. Co.* (1953), 96 Ohio App. 302, 54 O.O. 313, 121

N.E.2d 694, *Jones v. Sears, Roebuck Co.* (Oct. 19, 1994), Montgomery App. No. 14528, unreported, 1994 WL 579864, and *Presley*, itself, all of which are cited by Builder's Square, are examples of slip-and-fall analysis in which the issue was whether the proprietor was sufficiently on notice of a hazardous condition not created by its own conduct to render negligent its failure to take remedial action. In the case before us, the hazardous condition constituting a proximate cause of the plaintiff's injuries was the vertical stacking of heavy wooden posts on a display case at eye level, with no restraining device to prevent or to reduce the likelihood that the posts would topple forward and strike a customer. This was not a hazardous condition created by someone other than the proprietor and his employees; consequently, the typical slip-and-fall analysis having to do with whether the proprietor was reasonably on notice of the existence of the hazard is immaterial in the case before us.

Builder's Square cites *J.C. Penny Co., Inc. v. Robison* (1934), 128 Ohio St. 626, 1 O.O. 299, 193 N.E.2d 401. In that case, a directed verdict for a defendant store owner was affirmed. The court found no evidence that the store owner had done anything to cause the plaintiff's fall beyond oiling its floor. The court held, as a matter of law, that in view of the public interest in sanitation, the mere oiling of a floor upon which the public is invited, without more, cannot constitute negligence. Essentially, the court held that reasonable minds could only reach one conclusion, and that is that the oiling of a floor, without some indication that it was done improperly, does not violate the duty of ordinary care owed to the public. In the case before us, we hold that reasonable minds could reach different conclusions as to whether Builder's Square's failure to employ a restraining device to prevent the four-foot posts from toppling and striking a customer violated its duty of ordinary care.

Builder's Square cites *Paschal v. Rite Aid Pharmacy, Inc.* (1985), 18 Ohio St.3d 203, 18 OBR 267, 480 N.E.2d 474. In that case the danger of puddles of water caused by snow from outside being tracked by customers into a drugstore during was held to be so obvious to the customer that the store owner had no duty to warn the customer. See, also, *S.S. Kresge v. Fader* (1927), 116 Ohio St. 718, 158 N.E. 174, another case cited by Builder's Square, in which the danger of a wet floor as a result of customers coming in from outside, where it was raining, was held to be too obvious to give rise to a duty to warn. In the case before us, we cannot say, as a matter of law, that the danger posed by four-foot posts being stacked vertically on upper display shelves, without anything to restrain them from toppling over and hitting a customer, would have been so obvious as to preclude any possibility of the store owner being found negligent. The difference in the two cases is that one is bound to know, through one's general experience in a colder climate, that when there is snow on the ground outside, it is likely that

the snow will come off the customers' footwear when they are inside, melt, and form shallow puddles. By contrast, a customer would not necessarily notice that tall, vertically stacked merchandise, displayed on shelves alongside which she is passing, have no restraints to prevent them from toppling and hitting her.

Builder's Square cites *Boles v. Montgomery Ward & Co.* (1950), 153 Ohio St. 381, 41 O.O. 403, 92 N.E.2d 9. In that case, a judgment for a plaintiff in a slip-and-fall case was reversed, and judgment was entered for the defendant store owner, because there was insufficient evidence to support the plaintiff's claim that her fall was caused by the store owner's negligence. Although there was testimony that the floor had been treated with a substance called Myco–Sheen some eleven days before plaintiff's fall, the court rejected as unreasonable the proposition that the plaintiff may have slipped on a spot of that substance left on the floor, in view of undisputed testimony that Myco–Sheen dries quickly and that the floor was cleaned daily, including the morning of the plaintiff's injury. There was no evidence to link the alleged slippery spot on the floor with a negligent act or omission of the store owner, unlike the case before us, where it is undisputed that Builder's Square failed to employ a restraining device to prevent the four-foot posts from toppling over, and the lack of a restraining device was a proximate cause of Ms. Kemper's injuries.

The Kempers' first and second assignments of error are sustained.

The Kempers' third assignment of error is as follows:

"The trial court misinterpreted the exclusivity requirement of the *res ipsa loquitor* [*sic* ] doctrine."

■ *Res ipsa loquitur* is a doctrine that shifts the burden of proof of negligence when the facts pertaining to the existence of negligence are exclusively within the knowledge of the defendant because of the defendant's exclusive control of the environment. The typical example is the surgery patient under a general anesthetic who suffers an injury or condition during the surgical procedure that is not normally experienced. Because the defendant has exclusive access to the facts bearing upon the issue of negligence, the normal burden of proof is reversed.

The Kempers argue that the trial court misinterpreted the exclusivity requirement. We agree with the trial court that the Kempers did not meet their burden to adduce evidence warranting the application *res ipsa loquitur* in this case.

■ The Supreme Court held, in *Hake v. Wiedemann Brewing Co.* (1970), 23 Ohio St.2d 65, 66–67, 52 O.O.2d 366, 367, 262 N.E.2d 703, 705:

"To warrant application of the rule [of *res ipsa loquitur* ] *a plaintiff must adduce evidence* in support of two conclusions: (1) That the instrumentality

causing the injury was, at the time of the injury, or at the time of the creation of the condition causing the injury, under the exclusive management and control of the defendant; and (2) that the injury occurred under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been observed. * * * Whether sufficient evidence has been adduced at trial to warrant application of the rule is a question of law to be determined initially by the trial court, subject to review upon appeal." (Emphasis added.)

In explaining the reason why a plaintiff must show evidence on the exclusivity requirement before a trial court can allow *res ipsa loquitur* to substitute for direct evidence of causation, the Supreme Court in *Jennings Buick, Inc. v. Cincinnati* (1980), 63 Ohio St.2d 167, 170–171, 17 O.O.3d 102, 105, 406 N.E.2d 1385, 1388, stated that "there must be evidence tending to prove that the instrumentality causing the injury was under the exclusive management and control of the defendant, permit[ting] the * * * inference that it was the defendant who was negligent."

 In their response to the motion for summary judgment, the Kempers failed to establish that Builder's Square had exclusive control over the posts displayed on a self-service shelving unit. In order to warrant application of *res ipsa loquitur*, the Kempers would have had to produce evidence that no other customers or third parties could have had control over or rearranged the posts from the time the posts left the control of Builder's Square until Ms. Kemper was injured. Ms. Kemper's testimony that no one was near her before the accident is insufficient to establish the exclusivity of control required before it would be permissible to infer that Builder's Square was negligent.

In their brief to this court, the Kempers have attributed a long quoted passage to *Becker v. Lake County Mem. Hosp. West* (1990), 53 Ohio St.3d 202, 560 N.E.2d 165, which they claim supports their argument that the exclusivity requirement has been eroded and loosened in recent years. We have been unable to find this passage in *Becker;* moreover, the question certified to the Supreme Court in *Becker* dealt with the question of concurrent exclusive control, which has no bearing on the case before us.

We conclude that the doctrine of *res ipsa loquitur* has no application to this case. The Kempers' third assignment of error is overruled.

The Kempers' first and second assignments of error having been sustained, the judgment of the trial court is *reversed,* and this cause is *remanded* for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

GRADY, J., concurs.

FREDERICK N. YOUNG, J., dissents.

FREDERICK N. YOUNG, Judge, dissenting.

I must respectfully dissent.

The majority holds that the Kempers, as nonmovants, have met their burden on summary judgment. I disagree. When challenged by Builder's Square to come forward with "specific facts" to show that genuine issues on the essential elements of their claim existed for a trial under Civ.R. 56(E), the Kempers failed to produce evidence of any sort. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus, approving and following *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265.

When considering a motion for summary judgment, although a trial court must construe the evidence most strongly in favor of a nonmovant, *Bowen v. Kil–Kare, Inc.* (1992), 63 Ohio St.3d 84, 88, 585 N.E.2d 384, 388–389, "unsupported allegations in the pleadings do not suffice to necessitate the denial of a summary judgment. The principal function of Civ.R. 56(E) is to enable *movement beyond allegations* in the pleadings, and to analyze the evidence so as to ascertain whether an actual need for a trial exists." (Emphasis added.) *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 79, 375 N.E.2d 46, 47; see, also, *Celotex,* 477 U.S. at 323–324, 106 S.Ct. at 2553, 91 L.Ed.2d at 273–274. Thus, it is not enough for a nonmovant to claim that the "mere existence of *some* alleged factual dispute" will defeat "an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." (Emphasis sic.) *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 247–248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211; see, also, *Barney v. Chi Chi's, Inc.* (1992), 84 Ohio App.3d 40, 43, 616 N.E.2d 269, 271 (citing *Anderson*).

The fundamental point with summary judgment is that a nonmoving party, who has the burden of proof at trial, has the burden in responding to a motion for summary judgment to rebut directly all contentions that it lacks Civ.R. 56(E) specific facts on the essential elements of its claim. Unrebutted contentions may be considered by a trial court as undisputed issues of fact. Moreover, since the Kempers failed to rebut Builder's Square's arguments with specific facts, the trial court was unable to construe the evidence most strongly in the Kempers' favor because a trial court can consider only facts and evidence, not unsupported allegations, most strongly in favor of a nonmovant.

The record shows that, in response to Builder's Square's motion for summary judgment on the questions of the extent of its duty and of causation, the Kempers

relied on the "mere allegations" of their pleadings by iterating their claim that "the failure of Defendant Builder's Square to restrain the wood from falling by the use of a safety strap or some other device constitutes a failure to exercise ordinary care." Instead of refuting Builder's Square's allegation that they lacked proof on essential elements of their claim, the Kempers attempted to deflect that argument by countering that Builder's Square did not meet its burden on summary judgment based on Ms. Kemper's testimony that no other customers were near her when the posts fell.

Ms. Kemper's testimony, however, pertains to whether *res ipsa loquitur* is appropriate in this case. With respect to *res ipsa loquitur,* I agree with the majority that this is not a case warranting its application. Regardless of the type of evidence, without Civ.R. 56(C) evidence to support the essential elements of their personal injury suit, the Kempers failed to their meet their burden in responding to a motion for summary judgment.

Although the Kempers argue in their memorandum in opposition to the motion for summary judgment that there are "material" facts in dispute, the dispute they put forward is not material in any respect. The Kempers argue that Builder's Square implies that the incident is a figment of Ms. Kemper's imagination. Aside from the fact that the record does not support their claim, this argument does not create a disputed material fact for trial. In his deposition, Winegardner testified that, although he had no present recollection of the incident, it was his practice to complete an accident report within minutes of an incident. He noted on the report that Ms. Kemper had been cut and that she had told him that wood posts had fallen on her. Winegardner also testified that company policy required employees who witnessed accidents to report them to management on duty. Because the witness statement portion of the accident report is left blank, Winegardner testified that no employees reported anything to him about this incident.

With respect to the Kempers' claim for negligence, Builder's Square does not dispute that it owed a duty of ordinary care to business invitees. The Kempers have put in dispute the extent of the duty of ordinary care by alleging in their complaint that "in failing to store its wood material in a safe manner, in failing to make the premises safe, and in failing to warn plaintiff of dangers in or about the premises," Builder's Square was negligent. Yet they fail to produce any Civ.R. 56(C) evidence to support this allegation in their memorandum in opposition to the motion for summary judgment.

The duty that a merchant owes to any business invitee is the duty to maintain its premises in a reasonably safe condition so that customers are not unnecessarily and unreasonably exposed to danger. *Paschal v. Rite Aid Pharmacy, Inc.* (1985), 18 Ohio St.3d 203, 18 OBR 267, 480 N.E.2d 474. In other words, a

merchant has a duty to avoid injuring customers through negligent acts, warn customers of hidden dangers known to the merchant, conduct reasonable inspections of the premises to discover any potential dangers, and take reasonable precautions to protect customers from dangers that are foreseeable from the arrangement or use of the premises. *Perry v. Eastgreen Realty Co.* (1978), 53 Ohio St.2d 51, 52, 7 O.O.3d 130, 130–131, 372 N.E.2d 335, 336. A merchant, however, is not an insurer of a customer's safety, *Paschal* at 203, 18 OBR at 267, 480 N.E.2d at 475, meaning that a merchant is not required to inspect everything that might conceivably cause injury.

Furthermore, the burden of proof that a merchant has failed to take reasonable precautions is on an invitee. *Perry* at 53, 7 O.O.3d at 131, 372 N.E.2d at 336–337. "The mere happening of an accident gives rise to no presumption of negligence, and where one is accidently injured while he is a business guest upon the premises of another, the burden is upon the person injured to show negligence upon the part of such other before he can recover damages from such other." *Parras v. Std. Oil Co.* (1953), 160 Ohio St. 315, 52 O.O. 206, 116 N.E.2d 300, paragraph one of the syllabus. An inference of negligence cannot be based on "mere guess, speculation, or wishful thinking." *Allen v. Am. Bldg. Serv., Inc.* (Nov. 9, 1993), Montgomery App. No. 13975, unreported, 1993 WL 462208, citing *Parras,* paragraph two of the syllabus.

The record indicates that the posts were between three and one-half feet and four feet long, were solid wood, and were four inches by four inches at the base. A photograph of a similar post shows that the squared four-inch by four-inch base of the post is nearly one-third of the post's overall length. The turned upper portion of the post appears heavy and substantial. Given the substantial weight and dimensions of the posts, I disagree with the majority that Builder's Square created a hazardous condition by displaying these posts on an upper shelf and also disagree that it was a reasonably foreseeable contingency that these posts would have fallen without some intervening force. It is common sense that relatively short and heavy posts displayed on a stable platform will not topple forward under their own power. In other words, "bodies at rest stay at rest."

Actually, the most likely explanation for the falling posts is that they were accidentally hit by the long, slender wood trim molding being carried in an upright manner by Ms. Kemper herself. By her own testimony, that wood trim was the only possible "intervening force" in the vicinity of the wood posts at the time of the accident.

Given that the invitee has the burden of producing sufficient proof to show that a merchant has failed to take steps that a reasonable merchant would take, and given that the Kempers in bringing this suit have the burden of proof at trial, as nonmovants in responding to a motion for summary judgment, the Kempers were

required to present evidence to demonstrate that Builder's Square had not met its duty of ordinary care to withstand summary judgment. Moreover, although I agree with the majority that the Kempers were not required to present expert testimony on the standard of care, in order to survive summary judgment, the Kempers were required to present any evidence, not speculation or conclusory allegations, to show that a genuine issue of material fact existed for trial.

After Builder's Square moved for summary judgment based on the Kempers' failure of proof on the questions of extent of duty and proximate cause, and after the Kempers countered with unsupported allegations and speculation, the trial court properly granted summary judgment. Trial courts must be especially vigilant to guard against claims which are grounded only in speculation and not in evidence. Summary judgment is a proper vehicle for the exercise of such vigilance, and I believe the trial court in this case exercised it properly.

I would affirm.