OPINION
Plaintiff-appellant, Constance M. Newkirk, appeals an order of the Butler County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Eavey Quality Foods, Inc., in a slip and fall action.
Eavey Quality Foods, Inc. was a grocery store in Hamilton, Ohio which permanently closed on May 18, 1996. The store was subsequently replaced by a "Pick and Save" store. On August 20, 1994, appellant was grocery shopping in Eavey Quality Foods, Inc. and pushing her cart when she slipped on a "pinkish" substance on the floor. As a result, appellant fell and injured the back of her head, her back and her neck. In her deposition, appellant testified that soon after her fall, a female employee of appellee came to check on appellant and asked her what she had fallen on. Appellant replied that she did not know. The employee then looked down at the floor and stated that "it looked like a red juice * * * their juices ha[ve] been known to leak."
On February 14, 1996, appellant filed a complaint in the trial court against appellee alleging that appellee was negligent in failing to maintain a safe business premises and that its negligence was the proximate cause of her injuries. Appellee filed an answer on March 27, 1996 and a motion for summary judgment on November 6, 1996. Appellant filed a memorandum in opposition on November 15, 1996. By opinion and order of judgment filed December 17, 1996, the trial court granted appellee's motion for summary judgment. This timely appeal followed.
In her sole assignment of error, appellant argues that the trial court erred in granting summary judgment in favor of appellee "in that it was foreseeable that defendant's juices which `had been known to leak' would cause plaintiff to slip and fall and the plaintiff slipped on one of those juices which was spilled."
Civ.R. 56(C) provides in part that summary judgment shall be rendered when there is no genuine issue as to any material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds could come to but one conclusion, and the conclusion is adverse to the party against whom the motion is made, such party being entitled to have the evidence construed most strongly in his favor. Additionally, a party who opposes a motion for summary judgment may not rest upon the allegations or denial of his pleadings but must affirmatively demonstrate the existence of genuine issues of material fact to prevent the granting of a motion for summary judgment. Civ.R. 56(E); Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, 115.
It is undisputed in this case that the relationship between the parties was that of business invitee and occupier of the premises. Business invitees are persons who enter the premises of another for a purpose that is beneficial to the owner or occupier. Light v. Ohio University (1986), 28 Ohio St.3d 66, 68.
Store owners owe invitees "a duty of ordinary care in maintaining the premises in a reasonably safe condition so that its customers are not unnecessarily and unreasonably exposed to danger." Paschal v. Rite Aid Pharmacy, Inc. (1985), 18 Ohio St.3d 203. However, store owners are not insurers against all types of accidents that may occur on their premises. S. S. Kresge Co. v. Fader (1927), 116 Ohio St. 718, 723. The fact that a patron is injured on the premises of a store owner does not by itself give rise to an inference of negligence. Kemper v. Builder's Square, Inc. (1996), 109 Ohio App.3d 127, 134.
In order to prevail in cases where, such as here, injury arises from a "slip and fall" due to a hazardous condition not created by the store owner or his employees, the plaintiff must show that either the store owner through his employees "had actual knowledge of the hazard and neglected to give adequate notice of its presence or remove it promptly[,] or * * * [t]hat such danger had existed for a sufficient length of time" to enable him, in the exercise of ordinary care, to remove it or warn patrons about it. Johnson v. Wagner Provision Co. (1943), 141 Ohio St. 584,589. In this case, appellant argues that appellee had constructive notice of the alleged hazard.
In her appeal of the trial court's decision, appellant raises six issues. Four of the issues concern whether appellee had constructive notice of the alleged hazard. The other two issues deal with what evidentiary material may be considered in deciding a motion for summary judgment and will be addressed first.
Appellant first argues that even though her deposition was never filed, it should nevertheless be treated as part of the record "since both parties and the Trial Court so acted." Apparently, through inadvertence, only the deposition of Roger Newkirk, appellant's then husband, was filed.
Civ.R. 56(C) specifically prescribes what evidentiary material may be considered in deciding a motion for summary judgment. Depositions may not be considered unless they have been "timely filed in the action." Civ.R. 56(C).
While appellant's deposition was never filed in the action as required under Civ.R. 56(C), we nevertheless agree with appellant that her deposition should be considered as part of the record before this court for the following reasons: First, appellee agrees with appellant that her deposition should be treated as filed and urges this court to do so. Second, the record shows that selected pages of appellant's deposition were incorporated in appellee's motion for summary judgment and, more importantly, in the trial court's December 17, 1996 opinion. Neither party objected to the failure to file the deposition or to the trial court's consideration of appellant's deposition. As a result, any error was waived, Cassidy v. U.S. Health Corp. (Mar. 18, 1994), Scioto App. No. 2158, unreported; Harleysville Mut. Ins. Co. v. West 106th St. Realty (July 28, 1988), Cuyahoga App. No. 54178, unreported, and appellant's deposition will be considered as part of the record before this court.
Appellant next argues that even though they were never filed, appellee's answers to appellant's interrogatories should be treated as filed to rebut the trial court's statement that appellant "provide[d] no identification of the `unidentified' Eavey's employee who allegedly made th[e] statement [about the leaking juices]." Appellee's answers stated that it had no current address on the individuals employed in the store in 1994, that the store had closed on May 18, 1996, and that documents not disposed of had been filed away in storage. The trial court's decision never mentions or refers to appellee's answers.
Answers to interrogatories may not be considered unless they have been "timely filed in the action." Civ.R. 56(C). In light of the fact that (1) appellee's answers to interrogatories were not filed in the action, (2) unlike with regard to appellant's deposition, appellee does not agree that these answers should be treated as part of the record, and (3) the answers were neither considered by the trial court nor incorporated in its decision, appellee's answers to interrogatories will not be considered as part of the record before this court. Earl Evans Chevrolet, Inc. v. General Motors Corp. (1991), 74 Ohio App.3d 266, 281; App.R. 9(A).
In addition, we agree with the trial court that appellant failed to identify the employee who allegedly made the statement about the leaking juices. Upon learning that appellee did not have the ability to produce the names of the employees working in the store on August 20, 1994, appellant did not engage in any other discovery efforts in an attempt to identify the employee. The record shows, however, that in her deposition taken in August 24, 1996, appellant testified that the last time she was in Pick and Save, the store that replaced Eavey Quality Foods after May 1996, the same employee was working there.
We now turn to the central issue of whether appellee had constructive notice of the alleged hazard. In its decision, the trial court granted summary judgment in favor of appellee after finding that appellant had failed to establish (1) what the "pinkish" liquid consisted of; (2) how it got on the floor, "i.e., from a spill by another patron or a leak from a container, or any specific facts, such as a trial of juice from a shelf leading to * * * where plaintiff fell;" (3) how long it had been on the floor before appellant's fall; and (4) whether an Eavey's employee knew or should have known about it for a sufficient amount of time to have cleaned it up or warned appellant about it.
Appellant argues that the trial court erred in failing to infer from the employee's statement that "they have been known to leak," and from Newkirk's affidavit that the juices referred to came from "Little Hugs" containers, a brand name sold by appellee. Appellant also argues that the trial court erred in stating that she had failed to show any specific facts such as a trial of juice. Appellant contends that it can be inferred from the employer's statement and Newkirk's affidavit that the liquid upon which appellant slipped and fell "was from the `known to leak' juice display."
Newkirk's affidavit states in relevant part:
 I went to where Connie was laying on the floor, one leg under her. This place is marked "F" on the attached sketch * * *. She was in the "blue tile" aisle * * * opposite aisle 9.
 I then saw drops of a liquid which were hard to see, unless you knew to look, or were very close, within a couple of feet I saw the drops when I bent down to get the money for the groceries from Connie's pocket. The liquid was a color between "red" and "pink," that I call cherry.
 The "Little Hugs," a brand name for plastic juice containers, and other juices were then displayed on the display or shelves as marked in aisle 9 on the attached sketch.
 The drops of cherry liquid I saw were between "F" and the Little Hugs display as marked on the sketch. The floor, then and now, consists of 1 foot by 1 foot vinyl or asphalt tiles that were well-waxed and thus very slippery when a liquid is on the floor. The Little Hugs (a brand of juice that comes in different sizes of plastic containers) are also sometimes displayed on wooden skids elsewhere in the store. However, the juices such as Little Hugs were usually "permanently" displayed in aisle 9.
After reviewing appellant's affidavit which contains the employee's statement and Newkirk's affidavit, we agree with the trial court that appellant failed to establish that the "pinkish" substance she allegedly slipped on came from a Little Hugs container displayed in aisle 9. The employee's statement does not refer to a specific brand name but only refers to "they." In light of Newkirk's affidavit that Little Hugs and other juices were on display in aisle 9, we find that the employee's statement could as easily have referred to other brands of juices as it could have referred to Little Hugs.
Nor does Newkirk's affidavit establish that only Little Hugs juices were usually permanently displayed in aisle 9 as opposed to other brands of juices. Thus, appellant's allegation that, based on the employee's statement, appellant slipped on red juice from Little Hugs containers is simply a conclusory statement not supported by any evidence.
We also find that appellant's allegation that the liquid she slipped on was from appellee's "known to leak" juice containers is not supported by any evidence. Appellant contends that based on the employee's statement and Newkirk's reference in his affidavit to drops of liquid on the floor, the trial court should have inferred that the liquid on the floor was from the "known to leak" juice containers. We disagree. Newkirk's affidavit merely states that the drops of liquid were located between where appellee fell and the Little Hugs display. A sketch attached to the affidavit shows four drops located as described in his affidavit. Neither the affidavit nor the sketch show evidence of a trial of juice from the juice display to where appellant fell, evidence which would tend to substantiate a leaking container. Nor do they show that the drops "were aligned in a direction toward the juice" as asserted by appellant.
In addition, the employee's statement that "it looks like some kind of juice. They have been known to leak" is merely a speculative statement which does not affirmatively demonstrate that the liquid appellant slipped on was juice from the "known to leak" juice containers. As previously stated, a party who opposes a motion for summary judgment may not rest upon mere allegations or speculations.
Appellant also argues that the trial court erred in finding that appellant had failed to establish how long the liquid was on the floor before appellant's fall. Appellant contends that appellee had constructive notice of the alleged hazard based on the employee's alleged statement that some type of juice had been known to leak.
It is well-established that to establish constructive notice, the length of time the substance was on the floor must be established. Presley v. Norwood (1973), 36 Ohio St.2d 29, 32; Jones v. Sears, Roebuck Co., Inc. (Oct. 19, 1994), Montgomery App. No. 14528, unreported. In her deposition, appellant testified that she did not notice the "pinkish" liquid on the floor until after her fall. Appellant further testified that she had no knowledge of how long the liquid had been on the floor before she fell or how it got there. Appellant also testified that she had no knowledge of anyone else falling in the area where she fell or of previous complaints. Nor did she know if anyone had notified appellee about the existence of the liquid on the floor on the day she fell.
After reviewing appellant's deposition and the affidavits attached to her memorandum in opposition to appellee's motion for summary judgment, we find that appellant presented no evidence that appellee had notice of the liquid on the floor. Nor did appellant provide any evidence (1) to establish the length of time, or (2) to indicate that the liquid had been on the floor for a period of time sufficient to hold appellee liable for a breach of ordinary care. We are mindful of the employee's statement. However, while some juice containers may have been known to leak in the past, there is no evidence in the record to prove that containers leaked on the day appellant fell. We therefore find that appellant failed to establish constructive notice on the part of appellee.
Appellant argues however that the trial court erred when it did not rely upon Cassano v. Antenan-Stewart, Inc. (1993), 87 Ohio App.3d 7, a decision written by this court, and find that appellee had constructive notice. Appellant contends that Cassano is binding and on point in the case at bar.
We find that Cassano is factually distinguishable from the case at bar and thus that its holding does not apply here. In Cassano, a business invitee was struck by an automobile while walking on the sidewalk in front of the defendant's store. The issue on appeal was whether the injuries sustained by the plaintiff and caused by a third person were foreseeable. This court held that in light of the fact that the defendant knowingly allowed automobiles to park close to a sidewalk utilized by its invitees without installing any protective barrier, reasonable minds could differ on whether the injuries were foreseeable and thus summary judgment was inappropriate. Id. at 11.
The case at bar involves a slip and fall of a business invitee on a foreign substance while inside the premises of a store owner or occupier. As previously stated, in order to prevail in a "slip and fall" case, the plaintiff must show that the store owner or occupier had either actual or constructive notice of the alleged hazard. Because appellant is arguing that appellee had constructive notice of the existence of the liquid on the floor, appellant must show how long the liquid was on the floor before her fall. Appellant has failed to do so.
We therefore find that appellant has failed to affirmatively demonstrate the existence of genuine issues of material fact regarding appellee's alleged lack of ordinary care. As a result, the trial court did not err in granting appellee's motion for summary judgment. Appellant's sole assignment of error is overruled.
YOUNG, P.J., and WALSH, J., concur.