OPINION
This timely appeal arises from the Mahoning County Court of Common Pleas judgment granting a directed verdict to Appellee, Stratton Chevrolet Co., on a negligence claim and from a jury verdict in favor of Appellee on the issue of breach of bailment. For the following reasons we must affirm the decision of the trial court.
In 1995, Appellant, William Anderson, ordered and purchased a new 1995 Chevrolet C-3500 truck from Appellee Stratton Chevrolet Co. On September 9, 1996, Appellant took the truck to Appellee's dealership for a tune-up and minor warranty work. Appellant informed dealership personnel that he needed to pick up the truck on September 14, 1996, whether or not the repairs were completed. On September 14, 1996, Appellant and his son Mark Anderson arrived at the dealership to pick up the truck. They and Pete Poly (Poly), Appellee's service advisor, discovered that the truck had been damaged in an apparent theft attempt. Upon inspection, it was discovered that the steering column cover was laying on the ground near the truck, the steering wheel tilt lever was broken off, the dome light had been removed, the ignition switch was damaged, the dash board had deep scratch marks, the passenger's window was down about two inches and the doors were unlocked. The police were called and a report was made.
Appellant and Poly attempted to start the truck but they were unsuccessful. To thwart any further theft attempts, Appellant and his son began to remove parts from the engine in order to make the truck completely inoperable. Poly stopped them and removed the fuel pump relay from the truck. It was later discovered that removing the fuel pump relay made it more difficult to start the truck but not impossible.
Appellant and his son maintain that Appellant insisted that the truck be moved inside the dealership. Poly testified that Appellant said that he wanted to catch the thief and his instructions were to leave the truck in the same condition as it had been found. Regardless, it is undisputed that Appellant voluntarily left his truck at the dealership in the same condition as it was found on September 14, 1996.
On September 15, 1996, the dealership informed Appellant that his truck had been stolen. On July 10, 1997, Appellant filed a complaint against Appellee for breach of contract, breach of bailment contract, negligence, misrepresentation and consumer fraud. On August 7, 1998, the trial court sustained Appellee's motion for summary judgment as to claims of misrepresentation and consumer fraud but overruled Appellee's motion as to the claims of negligence, breach of contract and breach of bailment.
A jury trial commenced on April 19, 1999. At the conclusion of Appellant's case in chief, Appellee moved for a directed verdict. The motion was sustained on claims of breach of contract and negligence. With respect to the negligence claim, the court stated that it found that Appellee's activities involved matters not within common knowledge and that Appellant failed to present evidence as to what constitutes ordinary care under such circumstances. The case went to the jury on the issue of breach of bailment and on April 22, 1999, the jury returned with a verdict for Appellee.
On May 5, 1999, Appellant filed a Motion for JNOV and/or a new trial. The trial court overruled the motion on May 21, 1999. Appellant filed his notice of appeal on June 21, 1999. His first assignment of error alleges:
 "THE LOWER COURT ERRED IN GRANTING APPELLEE'S DIRECTED VERDICT AT THE CLOSE OF APPELLANT'S CASE ON THE ISSUE OF NEGLIGENCE."
Appellant first argues that he introduced sufficient evidence of negligence to withstand a motion for directed verdict. Appellant contends that he presented evidence to establish every element of a negligence claim; these elements being: 1) a duty that was owed by Appellee to Appellant; 2) Appellee's failure to discharge that duty; and 3) injury to Appellant as a proximate result of Appellee's failure to discharge that duty. Parise v. Otis Elevator Co. (1954) 100 Ohio App. 200. Appellant contends that those elements are satisfied in the present case by testimony that Appellee's service advisor was aware of the attempted theft but that despite Appellant's instruction that the truck be placed inside the dealership, Appellee's agent failed to take such a reasonable step.
Appellant also argues that he was not required, as the trial court ruled, to present expert or other evidence concerning a standard of care for securing and protecting vehicles under the control of an automobile dealership since such a standard is within the comprehension of a lay person. Appellant admits that expert testimony is necessary to establish the standard of a care applicable in the case of a professional person. However, Appellant also asserts that no such showing is required when lack of skill or care is so apparent as to be within the comprehension of a lay person, requiring only common knowledge and experience to understand it. Simon v. Drake (1993), 87 Ohio App.3d 23.
Finally, Appellant states that by denying him the right to submit his claim to the jury on theories of both negligence and bailment contract, the trial court also denied him the right to have the jury consider the issue of comparative negligence. Appellant submits that as a result of the trial court's decision which limited jury instructions to the issue of bailment, Appellant was faced with an all or nothing situation; where he could only recoup his entire loss, or nothing. Appellant asserts that if the trial court would have submitted the issue of negligence and comparative negligence to the jury, he could have recovered part of his loss even if the jury had found him partially responsible for this loss.
Appellee responds that the trial court properly directed a verdict in its favor on the negligence claim. Appellee states that expert testimony is required, "in all proceedings involving matters of a * * * professional, or other like nature, requiring special study, experience or observation not within the knowledge of laymen in general[.]" McKayv. Rodman (1967), 11 Ohio St.2d 77. Appellee also agrees with Appellant that expert testimony is required to establish the standard of care unless the lack of skill or care of a professional is so apparent as to be within the comprehension of a lay person. Simon v. Drake, supra. However, Appellee contests Appellant's position that the present matter does not require expert testimony regarding the applicable standard of care.
With respect to Appellant's first assignment of error, Civ.R. 50(A)(4) provides that:
 "When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
A ruling on a motion for a directed verdict is a question of law rather than a question of fact, as it tests the legal sufficiency of evidence rather that its weight and credibility. Keeton v. Telemedia Co. of S.Ohio (1994) 98 Ohio App.3d 405, 409. Thus, appellate review of a ruling on a motion for directed verdict is de novo. Id.
In order to establish a cause of action in negligence, the plaintiff bears the burden of proving; (1) that the defendant owed a duty of reasonable care to the plaintiff, (2) that the defendant breached this duty, and (3) that the plaintiff suffered damages proximately caused by the breach. Strother v. Hutchinson (1981), 67 Ohio St.2d 282, 285. "The existence of a duty depends on the foreseeability of the injury."Menifee v. Ohio Welding Products, Inc. (1984), 15 Ohio St.3d 75, 77. "The test for foreseeability is whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act." Id. "The foreseeability of harm usually depends on the defendant's knowledge." Id.
 "A `duty' is an obligation imposed by law on one person to act for the benefit of another person due to the relationship between them. When risks and dangers inherent in the relationship or incident to it may be avoided by the obligor's exercise of care, an obligor who fails to do so will be liable to the other person for injuries proximately resulting from those risks and dangers if the injuries were reasonably foreseeable. In negligence cases the duty is always the same: to conform to the legal standard of reasonable conduct in the light of apparent risk. What a defendant must do, or must not do, is a question of the standard of conduct reasonably required to satisfy the defendant's duty."
Berdyck v. Shinde (1993), 66 Ohio St.3d 573, 578, citing Prosser Keeton on Torts (5 Ed. 1984) 356, Section 53.
In the present matter, the trial court based its directed verdict on the premise that the standard of conduct Appellee should have followed was not within common knowledge. Therefore, the court reasoned, Appellant was required to produce evidence of what others similarly situated would do. Both parties have interpreted the trial court's position to mean that Appellant was obligated to provide expert testimony as to the standard of care imposed upon Appellee, although Appellant clearly disputes the applicability of such a doctrine. The more appropriate reading of the trial court's decision to grant a directed verdict for Appellee on the negligence claim is that the court believed Appellant was required to present evidence of the customary practice of others similarly situated within the auto dealership industry. In either case, our review of applicable law compels us to disagree with the trial court's position on this issue.
"Expert testimony, or any testimony at all, for that matter, is not always required to establish a standard of care. Even where not all of the factors involved as to how a standard of care should be exercised are obvious to, or readily understandable by, a lay jury, affirmative evidence of the standard of care is not necessarily required." Kemperv. Builder's Square, Inc. (1996), 109 Ohio App.3d 127, 132; Thompson v.Ohio Fuel Gas Co. (1967), 9 Ohio St.2d 116, 117-118.
 "Except for malpractice cases (against a doctor, dentist, etc.) there is no general rule or policy requiring expert testimony as to the standard of care, and this is true even in the increasingly broad area wherein expert opinion will be received. * * * Courts could very easily expand the area in which expert testimony is required to establish the standard of conduct, but the tendency has been instead to resolve doubtful questions in favor of allowing the jury to decide the issue of negligence without its aid."
Kemper v. Builder's Square, Inc., 132-133, quoting Thompson v. Ohio Fuel Gas Co., 118. Expert testimony has also been generally required in negligence claims against other licensed professionals such as attorneys and architects. See, McInnis v. Hyatt Legal Clinics (1984), 10 Ohio St.3d 112; Simon v. Drake, supra.
In Thompson v. Ohio Fuel Gas Co., the plaintiff's decedent, an equipment operator for a county engineer, was operating a road grader that ruptured the defendant's gas line. The court held that expert testimony of the standard of care to be followed by the defendant in installing the gas line was not essential to maintaining the wrongful death action. Id., syllabus of the court. In Kemper v. Builder's Square,Inc., the plaintiff was struck by wooden posts which fell from a display at the defendant's store. In construing the Thompson case, the court inKemper stated: "If a lay jury could be expected to determine the proper standard of care in [Thompson] without the aid of an expert familiar with the usages and customs of the industry, we see nothing so esoteric in the case before us that would require expert testimony to establish the standard of care." Kemper v. Builder's Square, Inc., supra, 133. Likewise, we see nothing so perplexing about the standard of care that should be applied in the matter before us which would require expert testimony.
The Kemper court also stated that, "* * * evidence of usage and custom, while relevant to the determination of the standard of ordinary care, is not controlling." Id. "What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not."Id., quoting Texas Pacific Ry. Co. v. Behymer (1903), 189 U.S. 468,470. The defendant is left to do what is reasonable in light of the apparent risk. Burdyk v. Shinde, supra, 578.
Turning to the evidence presented prior to Appellee's motion for directed verdict, we are convinced that Appellant presented evidence sufficient to establish a cause of action in negligence, and therefore, to withstand Appellee's motion for directed verdict. Appellant testified that he left his truck with Appellee for service and repairs on September 9, 1996. (Tr. p. 119). Appellant also testified that when he arrived at Appellee's dealership on September 14, 1996, to retrieve his truck even though the service and repairs were not complete, he found the truck damaged by an apparent theft attempt. (Tr. pp. 128-132). Appellant testified that he was unable to start the truck due to damage to the steering column. (Tr. p. 131). Appellant stated that he implored Poly, Appellee's service advisor, to move the truck to a safer location but that Poly stated that there was no room inside the dealership and that the dealership's tow-truck driver was not available. (Tr. pp. 132-134). According to Appellant, Poly removed a part from the engine to disable the truck and thwart a further theft attempt and that Poly stated positively that the truck was inoperable. (Tr. p. 138). Appellant further testified that he left the truck as he found it on September 14, 1996, in reliance on Poly's representation that the truck was inoperable. (Tr. p. 143). Finally, according to Appellant, he was notified on September 15, 1996, that his truck had been stolen from Appellee's lot. (Tr. p. 146).
Construing Appellant's testimony in his favor, reasonable minds could conclude that Appellant has established the essential elements of a negligence cause of action. Based on the attempted theft of the truck and Poly's attempt to disable it, it was foreseeable that the truck could be stolen from Appellee's lot, thereby imposing a duty of reasonable care on Appellee. Poly's response to Appellant's entreaties that his truck be secured inside, that the dealership was full and that their tow truck driver was unavailable can be construed as an acknowledgment that securing the truck indoors was a reasonable precaution to prevent the theft of the truck; it indicates Poly's willingness to do so if he was able. Also, Poly's action to disable the truck can be construed as either a reasonable precaution to prevent the theft, or an inadequate measure. It can also be construed from Appellant's testimony that his loss, the theft of his truck, was proximately caused by Appellant's failure to act reasonably under the circumstances.
As reasonable minds could conclude in Appellant's favor, the trial court should not have granted Appellee's motion for a directed verdict on the issue of negligence. Therefore, this assignment of error has merit and we would ordinarily reverse the directed verdict as to the issue of negligence. However, based on our decision as to the second assignment of error, any error caused by the trial court's grant of directed verdict in this matter would be rendered harmless.
Appellant's second assignment of error alleges:
 "THE DECISION OF THE LOWER COURT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
Although Appellant does not so state, we must assume that this assignment of error deals with the issue of "due care" imposed by bailment, as Appellant's claim for breach of bailment was the sole remaining issue put before a jury. Based on our interpretation of the law and the record herein, this assignment of error lacks merit and the jury verdict must be affirmed. Further, based on the law of bailment, a jury trial on this issue negates any error in the trial court decision to grant a directed verdict as to negligence.
Appellant cites no law in support of this assignment of error. Appellant essentially argues that the evidence supports his conclusion that Appellee was aware of the attempt to steal the truck but failed to exercise reasonable care to prevent the actual theft. Appellant reiterates that he instructed Poly to move the truck inside and states that Appellee does not affirmatively deny this because Poly testified to the effect that he did not recall if Appellant made such a request. Appellant also challenges Poly's testimony that Appellant wanted the truck left as it was found so that he could catch the thief if he returned. Appellant argues that such a plan was highly unlikely considering his testimony that he was scheduled to work the entire night following the discovery of the attempted theft.
Appellant also points to testimony by Appellee's witnesses that Appellee's practice was to secure contractor's and special interest vehicles within the dealership building to prevent theft and that vehicles are used to barricade the entrances to the dealership lot to prevent theft. Appellant argues that Appellee did not undertake those procedures nor any other simple measures to prevent Appellant's loss.
It is well settled that when there exists competent, credible evidence which goes to all of the material elements of the case, a court of appeals must not reverse a judgment as being against the manifest weight of the evidence. Seasons Coal Co., Inc. v. Cleveland (1984),10 Ohio St.3d 77, 80. If the evidence is susceptible to more than one interpretation, we must give it the interpretation consistent with the trial court's judgment. Motors Corp. v. City of Pepper Pike (1995),73 Ohio St.3d 581, 584.
While an appellate court is bound to reverse a judgment that is against the manifest weight of the evidence in a proper case, the appellate court must indulge every reasonable presumption in favor of the lower court's judgment and finding of facts. Seasons Coal Co., Inc. v. Cleveland, 79-80. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the [trier of fact] is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co., Inc. v. Cleveland, 80.
As we construe Appellant's assignment of error, we are asked to determine whether the evidence supports the jury finding that Appellee did not breach the duty of care created by the bailment of Appellee's truck.
 "Bailment exists where one person delivers personal property to another to be held for a specific purpose with a contract, express or implied, that the property shall be returned or accounted for when this special purpose is accomplished or retained until the bailor reclaims the property. The duty of the bailee is to hold the property in accordance with the terms of the bailment."
Tomas v. Nationwide Mut. Ins. Co. (1992), 79 Ohio App.3d 624, 628. The failure of bailee to return the bailed property undamaged creates an action either in contract or in tort. David v. Lose (1966) 7 Ohio St.2d 97,98-99. To establish a prima facie breach of bailment duty, the bailor must prove that he had a contract of bailment, the delivery of the bailed property and the bailee's failure to return the property undamaged. Id., 99.
 "In an action by a bailor against a bailee based upon a breach of the contract of bailment, where the bailor proves delivery of the bailed property and the failure of the bailee to redeliver upon legal demand therefor, a prima facie case of want of due care is thereby established and the burden of going forward with the evidence shifts to the bailee to explain his failure to redeliver."
Id., 99-100, quoting Agricultural Ins. Co. v. Constantine (1944),144 Ohio St. 275, paragraph four of the syllabus.
"[T]he question is not whether the plaintiff has established negligence but whether the defendants have established a legal excuse for breach of the contract." David v. Lose, supra, 100. With respect to the bailee's duty of redelivery, "* * * it is erroneous to say that a bailee is liable for negligence. He is liable for not delivering the subject of the bailment, but is excused if it has been lost without fault or want of care on his part." Id., quoting 8 American Jurisprudence 2d, Bailments, Section 166.
In establishing the want of due care on the part of the bailee, the presumption arising from the bailee's failure to deliver, his explanation of the circumstances surrounding such failure and any evidence offered in rebuttal should all be considered and weighed by the trier of fact.Midwestern Indem. Co. v. Winkhaus (1987), 42 Ohio App.3d 235, 236. In the present case, it is not disputed that Appellant delivered his truck to Appellee for service and repairs and that the truck was stolen following the discovery of an unsuccessful theft attempt. As this constitutes aprima facie case of breach of bailment, we must only decide if there was competent, credible evidence that the truck was lost without fault or want of care by Appellee. Based upon the record, competent credible evidence existed to support the jury verdict. Appellant, on cross examination, testified that he wanted his truck left in the same condition as it was found. (Tr. p. 175). Appellant testified that he believed that the thieves would return to steal his truck and that he hoped they would be caught. (Tr. p. 175-176). Mark Anderson testified that Appellant was clear in his directions on how he wanted the truck left. (Tr. p. 220-221). Poly testified that Appellant instructed him to, "* * * leave the vehicle as we found it and put the pieces back on the ground the way we found them, leave the window down, leave the truck unlocked, at that point, and just leave it be." (Tr. p. 249). Poly stated that these instructions were coupled with Appellant's statements that he wanted to catch the thief. (Tr. p. 249).
As we stated earlier, a bailee is bound to hold the bailed property according to the terms of the bailment. Tomas v. Nationwide Mut. Ins.Co., supra, 628. The testimony at trial establishes as terms of the bailment that the truck was to be held as found after the attempted theft. Inasmuch as Appellee was complying with those terms as set forth by Appellant, we cannot conclude that the jury verdict in Appellee's favor was against the manifest weight of the evidence. Such a verdict is consistent with the evidence that Appellee was not at fault for failing to return Appellant's truck. Therefore, we overrule this assignment of error.
Furthermore, while we are mindful that bailment does not involve exactly the same standard as negligence, see Tomas v. Nationwide Mut.Ins. Co., infra, we must note that this is because, in order to show that a defendant has breached his duty of due care in bailment, it is not necessary that this breach rise to the level of finding that the defendant is negligent. The defendant may be held to a bailment claim on a lower standard than that required to prove negligence in tort. Thus, Appellant, in proving a bailment contract and the fact that he did not receive the bailed goods (the truck) intact and undamaged created a primafacie case in bailment. The burden then shifted to Appellee to prove why the truck was not returned, or returned undamaged, through no fault of Appellee and that Appellee used "due care" in the bailment. After presentation of all the evidence, the exact same evidence Appellant presented in his negligence claim, the jury believed that Appellee exercised such due care, was not at fault for the failure to return the truck and that Appellant's breach of bailment claim should fail.
From the record before us, we can determine that, despite Appellant's claims to the contrary, the elements he must prove to prevail in a negligence claim are greater than those necessary to hold Appellee in bailment. Appellant failed before the jury on his bailment claim. We must also note that Appellant was able to fully present all of the evidence in both his bailment and negligence claims, because the directed verdict by its nature exists only after Appellant has rested on the evidence. If, having established his prima facie bailment claim, the jury did not find fault with Appellee for want of "due care," Appellant could not reasonably expect the jury to find duty in tort, breach of that duty and proximate cause based on the exact same evidence. Common sense tells us, then, that since the jury ruled against Appellant based on the facts of his bailment claim, a claim which carries a lower burden of proof, the jury could not find in Appellant's favor in his negligence claim under the identical set of facts. For this reason, the trial court error in directing the negligence verdict against Appellant was rendered moot by the jury verdict on Appellant's bailment claim, a verdict which was not in Appellant's favor.
For all of the foregoing reasons, we must affirm the decision of the trial court.
 ______________ WAITE, J.
COX, P.J., concurs, DONOFRIO, J., concurs.