[Cite as *Lacy v. Wal-Mart Stores, Inc.*, 2012-Ohio-1690.]

# STATE OF OHIO, BELMONT COUNTY

## IN THE COURT OF APPEALS

## SEVENTH DISTRICT

| | | |
|---|---|---|
| QUIANO LACY, et al., | ) | |
| | ) | CASE NO. 11 BE 32 |
| PLAINTIFFS-APPELLANTS, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| WAL MART STORES, INC., | ) | |
| | ) | |
| DEFENDANT-APPELLEE. | ) | |

CHARACTER OF PROCEEDINGS:      Civil Appeal from Common Pleas
                               Court, Case No. 10 CV 161.


JUDGMENT:                      Affirmed.


APPEARANCES:
For Plaintiffs-Appellants:     Attorney Erika Klie Kolenich
                               Route 4 Box 529
                               Buckhannon, WV  26201


For Defendant-Appellee:        Attorney Robert Yallech
                               11 Federal Plaza Central
                               Suite 300
                               Youngstown, OH  44503


JUDGES:
Hon. Mary DeGenaro
Hon. Cheryl L. Waite
Hon. Gene Donofrio


                               Dated:  March 27, 2012

[Cite as *Lacy v. Wal-Mart Stores*, *Inc.*, 2012-Ohio-1690.]
DeGenaro, J.

{¶1} Plaintiffs-Appellants, Quiano Lacy, et al., appeal the decision of the Belmont County Court of Common Pleas, granting summary judgment in favor of Defendant-Appellee, Wal-Mart Stores, Inc., in a negligence action. On appeal, Lacy argues that summary judgment was improper because there are genuine issues of material fact regarding whether an unreasonably dangerous condition existed and whether Wal-Mart had superior knowledge of this condition.

{¶2} Upon review, Lacy's arguments are meritless. Lacy's evidence was insufficient to establish that an unreasonably dangerous condition existed. Rather, Lacy relies on mere speculation and the fact that he was injured to attempt to establish negligence. Accordingly, the judgment of the trial court is affirmed.

## Facts and Procedural History

{¶3} On March 30, 2010, Lacy filed a complaint in the Belmont County Court of Common Pleas against Wal-Mart. Lacy alleged that on April 2, 2008, while shopping in Wal-Mart's electronics department in its premises located at 50739 Valley Plaza Drive, St. Clairsville, Ohio, he was struck in the head and neck by negligently secured and positioned merchandise located six to eight feet off the ground. He asserted that Wal-Mart negligently failed to exercise its duty of reasonable care to inspect and maintain its merchandise and shelving units in the electronics department in a reasonably safe condition, and that he sustained serious injuries as a direct and proximate result of this negligence. Lacy also set forth loss of consortium claims for his wife, Satina Lacy, and his son, Quamari Lacy.

{¶4} Both parties supported their summary judgment pleadings with Lacy's deposition, which was filed with the trial court. He testified that on April 2, 2008, he was bent down to look at a printer-scanner when he heard a sound like something breaking loose. He looked up, and a monitor fell and hit him in the head. He confirmed that he was saying the shelf broke loose, causing the monitor to fall. However, when asked if he knew if the shelf itself broke so that it was no longer usable or it came undone from the poles in the back that held it up, Lacy responded that he did not look. He then confirmed that all he knew was that he heard a sound, he looked up, and the monitor came down.

He further confirmed that he had not previously noticed anything that would lead him to believe there was a dangerous condition.  He also did not know if Wal-Mart knew of any danger.

{¶5}    Lacy confirmed that he did not know why the monitor fell.  He stated that his wife and child were not tall enough to touch the monitor.  As far as he was aware, nobody bumped the shelf prior to the box falling.  He further explained that after the first box hit him, Satina caught a second box that was going to hit Quamari.

{¶6}    Lacy clarified that it was a monitor outside of the box that fell off the top shelf and hit him.  He stated that it did not break because he caught it, and then he set the monitor down and walked away.  However, upon further questioning, he seemed unsure if he caught the monitor and stated that he just knew it did not break.  He also stated that it hit him on the head, but he did not know if it hit his shoulder.  He explained that after the monitor hit him, everything was a blur and all he was thinking about was making sure Quamari was okay.

{¶7}    Counsel handed Deposition Exhibit 1 to Lacy and asked him whether the photograph looked like the shelf where this incident occurred, and Lacy replied that it was similar, elaborating that the shelf in the photograph did not contain the same products that were on the shelf he was looking at during the incident.

{¶8}    Lacy testified that other than his wife and son, who was two or three at the time, a Wal-Mart employee also witnessed the incident.  Lacy claimed that he knew the employee saw the incident because the employee came over right after it happened and asked if Lacy wanted to fill out an incident report.  Lacy did not know this employee's name but stated that it was not Joshua Amos, the assistant manager.  Lacy stated that at first he said he did not want to fill out a report, but he changed his mind around five or ten minutes after the incident happened.

{¶9}    Lacy believed he spoke with Amos after the incident, and stated that he filled out an incident report.  He also believed he was asked if he needed an ambulance and he said no because he was not incapacitated.  He continued shopping after the incident, and then his wife drove him to the hospital to see his niece's new baby.  He

acknowledged that he received a bill from Ohio Valley Hospital for treatment he received on April 2, 2008, but he did not remember the treatment. Finally, Lacy testified that he went to the Wheeling Medical Park Hospital the day after the incident and complained of neck pain.

**{¶10}** Wal-Mart filed a motion for summary judgment, arguing that there was no evidence of an unreasonably dangerous condition; that Lacy could not present any evidence that there was anything wrong with the shelf or merchandise, and merely because he was injured does not mean that the accident was due to any unreasonably dangerous condition. And even assuming that an unreasonably dangerous condition existed, there is no evidence that Wal-Mart created the alleged negligent condition nor had superior knowledge or notice of the condition.

**{¶11}** Lacy responded, asserting that the doctrine of res ipsa loquitur applied; that he met the requirements to establish a case of negligence because there was evidence that the premises were not in a reasonably safe condition, and that Wal-Mart had knowledge or notice of the condition. In support, Lacy attached the deposition of Wal-Mart assistant manager Joshua Amos, who was familiar with the incident.

**{¶12}** Amos explained that every associate at Wal-Mart is trained to do safety inspections of the store and if they see anything wrong while working, they are supposed to fix it at any time. Additionally, Wal-Mart has an asset protection coordinator who is in charge of the safety team. Regarding the shelving used in the area where the incident occurred in 2008, he testified it was the same shelving still used in the store, and if the shelves were empty, a person could not stick their hand through the shelf to the next aisle because there is pegboard that separates every aisle.

**{¶13}** Amos said that from what he remembered, Lacy told him he was struck in the head, but Amos did not remember what struck Lacy. Amos said that Lacy did not appear injured to him. He testified that he filled out an incident report and asked if Lacy needed an ambulance called. He did not know if there were any witnesses to the incident.

**{¶14}** Amos testified that Lacy took him to the aisle to take photographs of the

area of the store where the incident happened. Counsel stated there were some photographs introduced into evidence at Lacy's deposition, and Amos stated that those photographs were "probably" the photographs he took, although counsel did not have the photographs to show Amos. Amos said the photographs were taken the day of the incident and although he did not recall if Lacy was with him, he confirmed that Lacy showed him the area where the incident happened. Amos did not recall if there was any merchandise on the floor and he did not know what Lacy did with any merchandise that may have fallen off the shelf. Amos did not recall that the shelf in the area of the incident was broken. He explained that when shelving breaks in the store, it is replaced, and he was not aware of any shelf being replaced that day.

{¶15} Amos testified that during his time working for the St. Clairsville Wal-Mart or any other Wal-Mart, he did not know of anybody being injured by merchandise falling off shelves or shelving breaking. Amos further testified that he watched the surveillance video of the incident: "What I saw in the video was Mr. Lacy knelt down in front of a shelf. It appears an object starts to fall and his wife, or whoever it is at the time, stops that object from falling and he stands up and looks around, and that's all I seen of the video." Amos confirmed that the merchandise fell from the top shelf, and although he could not tell why it fell, he agreed that it did not look as if Lacy caused it to fall.

{¶16} Lacy also attached two photographs to his response to Wal-Mart's motion for summary judgment, which show a shelving unit that appears to have pegboard behind the merchandise on the lower shelf, but not the top shelf. And although Lacy mentioned the incident report in his response motion, he did not attach it as an exhibit.

{¶17} Wal-Mart filed a reply brief, contending that the doctrine of res ipsa loquitur did not apply and that despite Lacy's argument that the absence of pegboard caused the accident, he offered no evidence supporting this argument.

{¶18} On August 30, 2011, the trial court issued a judgment entry sustaining Wal-Mart's motion for summary judgment and dismissing Lacy's claims and Quamari Lacy's claim for loss of consortium. The court found that insufficient evidence existed in the record to support an inference that Wal-Mart, by its action or failure to act, proximately

caused the monitor to fall on Lacy. The trial court noted that Lacy testified that he had no idea how the monitor fell, no evidence was submitted to show what caused the incident to occur; although there was testimony about a video of the incident, the video was not submitted into evidence,. The trial court also found that the evidence was insufficient to establish that Wal-Mart had actual or constructive knowledge of an unreasonably dangerous condition prior to the incident and failed to take action to prevent it.

{¶19} The trial court further found that although the evidence demonstrates that the monitor fell from the shelf, the question remains as to the exact reason it fell. And rather than submitting additional evidence to satisfy its burden under Civ.R. 56(E), Lacy chose to argue that res ipsa loquitur, which the trial court found did not apply because Lacy did not produce sufficient evidence to establish that Wal-Mart had exclusive control over the monitor that struck him. Further, the court found the evidence was insufficient for it to conclude that the injury occurred under such circumstances that it would not have occurred if Wal-Mart exercised ordinary care. Finally, the trial court refused to consider Lacy's argument regarding the pegboard because Lacy submitted no supporting evidence, that argument alone could not be considered.

## Summary Judgment

{¶20} Lacy asserts one assignment of error on appeal:

{¶21} "The Trial Court erred in granting Defendant/Appellee's Motion for Summary Judgment."

{¶22} An appellate court reviews a trial court's decision to grant summary judgment de novo, applying the same standard used by the trial court. *Parenti v. Goodyear Tire & Rubber Co.* (1990), 66 Ohio App.3d 826, 829, 586 N.E.2d 1121. Under Civ.R. 56, summary judgment is only proper when, viewing the evidence most strongly in favor of the nonmovant, reasonable minds conclude no genuine issue as to any material fact remains to be litigated and the moving party is entitled to judgment as a matter of law. *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243. A fact is material when it affects the outcome of the suit under the applicable substantive law. *Russell v. Interim Personnel, Inc.* (1999), 135 Ohio App.3d 301, 304, 733 N.E.2d 1186.

{¶23} When moving for summary judgment, a party must produce some facts that suggest a reasonable fact-finder could rule in her favor. *Brewer v. Cleveland Bd. of Edn.* (1997), 122 Ohio App.3d 378, 386, 701 N.E.2d 1023. "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 296, 662 N.E.2d 264. The trial court's decision must be based upon "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action." *Id.*, citing Civ.R. 56(C). The nonmoving party has the reciprocal burden of specificity and cannot rest on the mere allegations or denials in the pleadings. *Id.* at 293.

{¶24} For Lacy to sustain a claim of negligence he must show: a duty owed by the defendant to the plaintiff, a breach of that duty, injury or damages, and the existence of proximate cause between the breach and the injury or damages. *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St.3d 75, 77, 472 N.E.2d 707. The existence of a duty is a question of law. *Mussivand v. David* (1989), 45 Ohio St.3d 314, 318, 544 N.E.2d 265.

{¶25} Lacy was on Wal-Mart's premises as a business invitee. "Business invitees are persons who come upon the premises of another, by invitation, express or implied, for some purpose which is beneficial to the owner." *Light v. Ohio University* (1986), 28 Ohio St.3d 66, 68, 502 N.E.2d 611. An owner or occupier of a business owes its invitees a duty of ordinary care in maintaining the premises in a "reasonably safe condition" so that its customers are not exposed to danger, *Paschal v. Rite Aid Pharmacy, Inc.* (1985), 18 Ohio St.3d 203, 203, 480 N.E.2d 474, and has the duty to warn its invitees of latent or hidden dangers. *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, at ¶5.

{¶26} Lacy first argues that genuine issues of material fact exist regarding whether there was an unreasonably dangerous condition. He asserts that Amos testified that the pegboards between the shelving were used as a safety precaution to ensure

merchandise was not pushed through the shelving unit from another aisle, and that the photographs taken by Amos demonstrate that no pegboard was used on the top shelf in the area where the incident occurred. He concludes that this evidence supports an inference that the lack of pegboard allowed customers in the opposite aisle to jar the merchandise, causing the monitor to fall on him. Lacy contends that it was not necessary to identify the exact dangerous condition or what caused the merchandise to fall, citing to *Kemper v. Builder's Square, Inc.*, 109 Ohio App.3d 127, 671 N.E.2d 1104 (2d Dist. 1996) and *Carr v. May Dept. Stores Co.*, 8th Dist. No. 77290, 2000 WL 1369902 (Sept. 21, 2000).

{¶27} In *Kemper,* the plaintiff was viewing merchandise on display on a shelving unit when four-foot wooden posts stacked upright without restraints fell off the top shelf and hit the plaintiff. *Id.* at 130. The trial court granted summary judgment based upon the plaintiff's failure to produce evidence to establish the store's duty of ordinary care. *Id.* at 131. The Second District reversed, holding that expert testimony was not required to establish the store's standard of care. *Id.* at 132. Despite the defendant's argument that the failure to identify the cause of the injuries precludes a finding that it breached its duty of care, the court found that "it is undisputed that the failure to have employed a restraining device, which a reasonable mind might find to have been inconsistent with the duty of ordinary care, was a proximate cause of [plaintiff's] injuries." *Id.* at 134. The court noted that in comparison to a case where there was no evidence, even inferentially, that the defendant did any act or omission that a jury could find negligent, in this case, "the alleged negligence was [the defendant's] failure to employ any restraining device to prevent the four-foot posts on an upper shelf from toppling forward and striking a customer, a reasonably foreseeable contingency." *Id.* at 135.

{¶28} In *Carr*, the plaintiff was shopping for clothing in a department store when a mannequin fell over on her. She filed a complaint against the store, alleging negligence in maintaining the store displays. *Id.* at 1. The Eighth District reversed the trial court's grant of summary judgment, explaining: "[The plaintiff] is not relying upon the mere fact that she had been injured on [the defendant's] premises to create an inference of

negligence. Instead, she argues that [the defendant's] failure to exercise reasonable care in maintaining its premises in a safe condition by locking the turnkey on the mannequin or by inspecting it or attending to the store display constituted a breach of its duty to exercise ordinary care." The court concluded that genuine issues of material fact existed, inter alia, what caused the mannequin to fall and whether it was properly secured with a turnkey. *Id.* at 3.

{¶29} Although Lacy argues that Amos testified that the pegboard was a safety precaution to prevent customers from pushing or knocking merchandise off shelves in opposite aisles, Lacy is misconstruing Amos's testimony. Amos's testimony simply relates the presence of the pegboard, not its purpose:

{¶30} "Q. Okay. Is the shelving such that if the shelves are empty and I am in one aisle, could I stick my hand all the way through the shelf to the other aisle?

{¶31} "A. No. There's pegboard that separates every aisle.

{¶32} * *

{¶33} "Q. Do you have that pegboard divider on the top shelf as well?

{¶34} "A. Yes. That actually runs the entire length of the gondola."

{¶35} Furthermore, when Lacy was shown photographs of the shelves during his deposition, he stated that those shelves only looked "similar" to the shelves from which the monitor fell, and he noted that the shelves in the photograph did not contain the same products he was looking at during the incident. Amos testified that after the incident, Lacy showed him the area where it occurred, and he took photographs of the area. Amos agreed he took the photographs the same day because "[w]e take them right when that happens." However, while Amos stated that the photographs he took were "probably" the same photographs introduced into evidence at Lacy's deposition, counsel did not actually have the photographs with her for Amos to identify. Thus, even construing this evidence in Lacy's favor, it does not actually support the conclusion that the top shelf from which the monitor fell was missing pegboard.

{¶36} *Kemper* is distinguishable because in that case the court found that it was "undisputed" that the failure to use a restraining device on the top shelf was the proximate

cause of plaintiff's injuries.  *Id.* at 134.  Here, the cause of Lacy's injuries is disputed; beyond Lacy's unsupported allegation of the absence of pegboard causing the dangerous condition, the record lacks any evidence regarding what caused the incident.  Similarly, the court in *Carr* found that the plaintiff was not solely relying on the fact she was injured to demonstrate the defendant's negligence; rather, the plaintiff contended that the store was negligent due to its failure to exercise reasonable care by locking the turnkey on the mannequin.  *Id.* at 3.  Although the majority did not go into much detail regarding what evidence the plaintiff presented on summary judgment, the dissent noted that the defendant's employee "merely stated the potential for a mannequin's fall existed if the turnkey were not properly locked."  *Id.* at 4.  Here, Amos merely testified regarding the existence of the pegboard lining the shelves, not that merchandise could fall if the pegboard was not installed.

**{¶37}** Lacy's arguments regarding the unreasonably dangerous condition are merely speculation, which is not sufficient to defeat summary judgment.  See *Hansen v. Wal-Mart Stores, Inc.*, 4th Dist. No. 07CA2990, 2008-Ohio-2477, ¶8.  Because Lacy has presented no evidence of Wal-Mart's negligence beyond speculation and the fact that the injury occurred, Lacy's argument that Wal-Mart had superior knowledge of the dangerous condition because it created the display is also meritless.

**{¶38}** Accordingly, Lacy's sole assignment of error is meritless.  Lacy's evidence was insufficient to establish that an unreasonably dangerous condition existed.  Rather, Lacy relies on mere speculation and the fact that he was injured to attempt to establish negligence.  Accordingly, the judgment of the trial court is affirmed.

Waite, P.J., concurs.

Donofrio, J., concurs.